UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| LAUSTEVEION JOHNSON,<br><br>　　　　　　　Plaintiff,<br>v.<br>D. GREGOIRE, *et al.*,<br>　　　　　　　Defendants. | Case No. 3:22-cv-00095-ART-CSD<br><br>**ORDER GRANTING, IN PART, AND DENYING, IN PART, MOTION TO DISMISS AND DENYING MOTION FOR HEARING**<br><br>**[ECF Nos. 35, 40]** |

　　　　Plaintiff Lausteveion Johnson, a Nevada prisoner, has filed a civil rights complaint by an inmate. (ECF No. 6 ("Complaint").) Currently before the Court is the Defendants' motion to dismiss the Complaint as duplicative. (ECF No. 35.) Johnson responded to the motion and moved for oral argument, and the Defendants replied. (ECF Nos. 37, 39, 40.) For the reasons discussed below, the motion to dismiss is granted, in part, and denied, in part, and the motion for hearing is denied.

**I.　　Procedural history and background**

　　　　Johnson's Complaint in the instant case (hereinafter "*Johnson I*") was received by this Court on February 16, 2022. (ECF No. 1.) A screening order was entered on July 25, 2022, and pursuant to the screening order, the Complaint was filed on July 26, 2022. (ECF Nos. 5, 6.) *Johnson I* was stayed to allow Johnson and the Defendants an opportunity to settle their dispute. (ECF No. 5 at 15.) *Johnson I* was later excluded from the early mediation program, and the stay was lifted. (ECF Nos. 8, 9.)

　　　　Johnson filed an allegedly similar complaint in a different case (hereinafter "*Johnson II*"): *Johnson v. Cornfield, et al.*, 3:22-cv-00108-MMD-CSD. The complaint in *Johnson II* was received by this Court on February 28, 2022. (3:22-cv-00108-MMD-CSD, ECF No. 1-1.) A screening order was entered on May 18, 2022, staying *Johnson II* to allow Johnson and the Defendants an opportunity to settle their dispute. (3:22-cv-00108-MMD-CSD, ECF No. 4.) *Johnson II* was also

1

excluded from the early mediation program, and the stay was lifted. (3:22-cv-00108-MMD-CSD, ECF No. 7.) Pursuant to the post-stay order, the complaint was filed on June 10, 2022. (3:22-cv-00108-MMD-CSD, ECF No. 8.)

The Defendants move to dismiss the Complaint in *Johnson I*, arguing that it is factually identical and maliciously duplicative of the complaint filed in *Johnson II*, and ask this Court to issue a strike against Johnson. (ECF No. 35.)

## II. Legal standard

This Court has "discretion to dismiss a duplicative later-filed action, to stay that action pending resolution of the previously filed action, to enjoin the parties from proceeding with it, or to consolidate both actions." *Adams v. Cal. Dep't of Health Servs.*, 487 F.3d 684, 688 (9th Cir. 2007), *overruled on other grounds by Taylor v. Sturgell*, 553 U.S. 880 (2008). This is because "[p]laintiffs generally have no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant." *Id.* (internal quotation marks omitted). "[I]n assessing whether the second action is duplicative of the first, we examine whether the causes of action and relief sought, as well as the parties or privies to the action, are the same." *Id.* at 689.

"To ascertain whether successive causes of action are the same," this Court "use[s] the transaction test, developed in the context of claim preclusion. Whether two events are part of the same transaction or series depends on whether they are related to the same sets of facts and whether they could conveniently be tried together." *Id.* (internal quotation marks omitted). In applying this test, four criteria are examined:

> (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts.

*Id.* The last criteria is the most significant. *Id.*

**III.   Discussion**

    **A.   The allegations made in *Johnson I***

In *Johnson I,* Johnson sued seven defendants for events that took place at Warm Springs Correctional Center ("WSCC"): Defendants Correctional Officer ("C/O") D. Gregoire, Phoenix Program Counselor Cornfield, Fiess, Caseworker V. Meza, C/O R. Nerson, Sergeant C. Mahram, and NDOC Director Charles Daniels. (ECF No. 6 at 1–2.) Johnson brought four claims and alleged the following facts.[1] (*Id.* at 3–13.)

On September 21, 2021, Defendant Cornfield, Johnson's Phoenix Program counselor, threatened to have a white prison gang called the Aryan Warriors assault Johnson, file a false notice of charges ("NOC") against Johnson, get Johnson removed from the Phoenix Program, and get Johnson booked on new charges by sending synthetic marijuana in his name. (*Id.* at 3, 8.) On September 28, 2021, Defendant Cornfield called six Aryan Warrior inmates into his office and showed them Johnson's criminal charges to get those six inmates to assault and kill Johnson. (*Id.* at 6, 8.) On October 5, 2021, and October 6, 2021, Defendants Cornfield, Gregoire, Meza, and Feiss forced Johnson to move from a bottom bunk to a top bunk, knowing he was physically unable to do so. (*Id.* at 9.) Defendants Cornfield, Gregoire, Meza, and Fiess wrote a false NOC against Johnson and removed him from the Phoenix Program. (*Id.*) These four retaliatory actions were made because Johnson is black, is Muslim, and told Defendant Cornfield that he would file a lawsuit against him.[2] (*Id.* at 8.) Additionally, the first retaliatory action was also made because Johnson told a fellow inmate who had recently converted to Islam that he could wear his Islamic religious cap called

---

[1] These facts have been taken from the screening order in *Johnson I*.
[2] According to Johnson, on September 21, 2021, Johnson threatened to sue Defendant Cornfield for telling Johnson that he could not practice his religion. (ECF No. 1-1 at 5.)

3

a Kufi, and the fourth retaliatory action was also made because Johnson filed an emergency grievance on October 5, 2021. (*Id.* at 8–9.)

Defendants Gregoire, Cornfield, Fiess, Meza, Nerson, Mahram, and Daniels had knowledge of the atrophy and arthritis in Johnson's back and knee[3] that prevented him from physically being able to climb into a top bunk. (*Id.* at 10.) Despite this, these Defendants ordered Johnson to be moved to a top bunk. (*Id.*) Johnson attempted to climb into his newly assigned top bunk twice on October 5, 2021, and October 6, 2021, but he fell on both occasions, causing injuries to his back, knees, hip, and legs. (*Id.*) Johnson submitted an emergency grievance on this issue on October 5, 2021, but in response, Defendants Gregoire and Cornfield filed an NOC against Johnson on October 6, 2021. (*Id.* at 6.) Defendants Meza, Nerson, and Mahram denied the emergency grievance, ordering Johnson to move to the top bunk. (*Id.* at 7.) Defendant Daniels failed to properly hire and train staff regarding treatment of serious medical conditions, resulting in staff members forcing Johnson to climb into the top bunk against his physical limitations. (*Id.* at 10–11.)

Defendant Cornfield told Johnson on September 18, 2021, and September 21, 2021, that Johnson could not exercise his spiritual duty of instructing a fellow inmate that that fellow inmate could wear his Kufi. (*Id.* at 12.)

Defendants Meza, Gregoire, and Cornfield wrote an NOC on October 6, 2021, and removed Johnson from the Phoenix Program because he is Muslim and black. (*Id.* at 13.) Contrarily, Defendants Meza, Gregoire, and Cornfield did not write up or remove any Christians or Caucasians from the program. (*Id.*)

Based on these allegations, Johnson brought a First Amendment retaliation claim, an Eighth Amendment claim for deliberate indifference, a First

---

[3] According to Johnson, these conditions were caused from being assaulted by 12 to 15 staff members in 2012 and then being forced into solitary confinement for 537 days. (ECF No. 1-1 at 2–3.)

4

Amendment free exercise of religion and Religious Land Use and Institutionalized Persons Act ("RLUIPA") claim, and a Fourteenth Amendment equal protection claim. (*Id.* at 8–13.) The Court liberally construed Johnson's second claim as an Eighth Amendment claim based on unsafe prison conditions. (ECF No. 5 at 5.)

### B.   The allegations made in *Johnson II*

In *Johnson II*, Johnson sued sixteen defendants for events that took place at WSCC: Defendants Cornfield, Kirk Widmar, Richard Ashcraft, V. Meza, Rynerson, Fernandez, Holloway, Suwe, Travis Fratis, D. Gregoire, Barrius, K. Fond, Coltrin, Charles Daniels, Fiess, and Ambaker. (3:22-cv-00108-MMD-CSD, ECF No. 8 at 1–3.) Johnson brought three claims and alleged the following facts.[4] (*Id.* at 4–20.)

Defendant Cornfield, Johnson's counselor, told Johnson that if he completed the Phoenix Program, Johnson would "automatic[ally]" receive parole. (*Id.* at 4–5.) Johnson's failure to complete the program, by contrast, would result in "an automatic denial of parole." (*Id.* at 5.) On September 7, 2021, Defendant Cornfield said that "there were too many Black inmates in the Phoenix Program, and he didn't like that." (*Id.*) Johnson is Black; Defendant Cornfield is white. (*Id.*)

Johnson served as the imam for the Muslims in Unit 2. (*Id.*) Around September 15, 2021, Johnson converted a white inmate named Jordan Davis to Islam. (*Id.*) Several days later, Davis was wearing a kufi cap in accordance with Johnson's instructions. (*Id.*) Defendant Cornfield told Davis that Davis could not wear a kufi because he was "not Black or Muslim." (*Id.*) Johnson responded that Davis could wear a kufi, and that Defendant Cornfield was violating the free exercise clause of the RLUIPA. (*Id.*)

On September 21, 2021, Defendant Cornfield told Johnson that Johnson should not have said Davis could wear a kufi. (*Id.*) Johnson replied, "I [ ] will sue

---

[4]These facts have been taken from the screening order in *Johnson II*.

5

you over th[ese] 1st Amendment[ ] and RLUIPA violations." (*Id.*) In response, Defendant Cornfield said that he had "rank" in the "A-Dubbs," a white supremacist prison gang, and that he could "get [Johnson] assaulted," write him up, kick him out of the Phoenix Program, cause his parole to be denied, and "send spice (synthetic marijuana) in [Johnson's] name." (*Id.*) Defendant Cornfield also "spoke about" breaking his supervisor's eye socket if she "trie[d] to fire him." (*Id.* at 6.) He claimed to have "already researched the medical cost" of such an assault—"$2,500." (*Id.*) Johnson said he would "never allow that to happen," and Johnson began filing kites and grievances about Defendant Cornfield's misconduct. (*Id.*)

On September 28, 2021, Defendant Cornfield called members of the A-Dubbs and another white supremacist gang into his office. (*Id.*) He solicited the gang members to attack Johnson by showing them Johnson's "criminal charges on the computer." (*Id.*) The gang members then tried to assault Johnson, but they could not "move on the matter because the Black inmates . . . supported [Johnson] physically and wouldn't allow them to jump [Johnson] without [there] being an all-out riot." (*Id.*)

Defendant Cornfield "came up with another tactic" after he failed to get the gang members to assault Johnson. (*Id.*) Specifically, Defendant Cornfield solicited Johnson's cellmate Harrison to assault him. (*Id.*) Harrison agreed to assault Johnson on the condition that the two remain cellmates after the assault. (*Id.* at 6–7.)

On October 5, 2021, Defendants Gregoire, Cornfield, and Meza ordered Johnson "to move from the bottom bunk to the top bunk" despite knowing that Johnson had been assigned to the bottom bunk due to a "sever[e] back and knee injury." (*Id.* at 6.) Johnson repeatedly told these Defendants that Johnson was "physically incapable of climbing to the top bunk because of his physical disability." (*Id.*) Their response: "We know that you are assigned to the bottom

bunk, but we're now assigning you to the top bunk." (*Id.* at 6–7.) Johnson filed a grievance about the issue on October 5. (*Id.* at 7.) Defendants Rynerson, Gregoire, and Cornfield then told Johnson, "Now that you grieved the issue, if you don't get on the top bunk, [you will] be written up and terminated from the Phoenix Program and [have your] parole denied." (*Id.*) Johnson subsequently tried to climb to the top bunk twice, falling "violently to the concrete floor" and injuring himself. (*Id.*)

On the morning of October 6, 2021, Harrison told Johnson that Defendant Cornfield had ordered him to assault Johnson. (*Id.*) That same day, Johnson filed a grievance about the issue. (*Id.*) Johnson then asked Hilldabrand, a caseworker, to move him out of his cell. (*Id.*) Hilldabrand agreed, giving Johnson a bottom-bunk assignment in a new cell later that day. (*Id.*) That afternoon, Defendants Cornfield, Gregoire, and Meza wrote Johnson up for "not physically being able to climb to the top bunk on 10/5/21." (*Id.*) This caused Johnson to be "terminated from the Phoenix Program." (*Id.*)

Defendant Fratis served Johnson with the notice of charges on October 24, 2021. (*Id.* at 8.) At the hearing, Johnson showed Defendant Fratis his medical records and a lawsuit in which "the federal court ruled in [Johnson's] favor regard[ing] his medical disability . . . and not being able to get on the top bunk." (*Id.*) Concluding that these records showed the NDOC had "been aware of this issue for years," Fratis "dismissed" the charges as "baseless." (*Id.*) As a result of the dismissal, Johnson was reinstated to the Phoenix Program on October 26, 2021. (*Id.*)

After the dismissal, Defendants Cornfield and Gregoire asked Johnson, "How did your [notice of charges] get dismissed[?] It [ ] was not supposed to get dismissed." (*Id.*) Defendant Cornfield then had staff members "berate" Defendant Fratis for dismissing the charges. (*Id.*)

On November 10, 2021, Defendants Cornfield, Gregoire, Meza, Ashcraft,

7

Fiess, Rynerson, Fernandez, Holloway, and Suwe told Johnson that he needed "to move from the bottom bunk [in his current cell] to the top bunk" in a new cell with Harrison. (*Id.*) These officials knew that Harrison had "promised to assault [Johnson] if they were cellmates." (*Id.*) Indeed, Johnson told them that they could not "force [him] to move into a cell with someone to be sexually assaulted." (*Id.* at 9.) Defendant Gregoire responded, "You have to go into the cell." (*Id.*)

At this point, Johnson spoke with Defendants Meza and Ashcraft, informing them about "the top bunk medical issue and [the] threat of sexual assault by Harrison." (*Id.*) During this conversation, Defendant Meza said, "No! I will not accommodate you. You have to face your fears and move into the cell with Harrison because you never kited medical on this issue to date!" (*Id.*) When Johnson showed Defendant Meza the kites he had submitted about "falling from the top bunk," Defendant Meza replied, "I don't care! Face your fears . . . and move into the room with Harrison. I [ ] won't accommodate you because you filed a lawsuit on this issue (2:19-cv-00232) and because you filed grievances against me [ ] and staff [ ] weeks ago. So move into the cell with Harrison or I'll write you up, kick you out of the program[,] and send you to the hole." (*Id.*) Johnson stated that he would file grievances about these issues; Defendant Meza said, "It's not grievable." (*Id.* at 9–10.)

Johnson returned to his unit, obtained an emergency grievance from Defendant Gregoire, and filed the grievance at 9:52 a.m. on November 10, 2021. (*Id.* at 10.) Defendant Gregoire then said, "I'm[ ] going to write you up for filing this fucking grievance you fucking [n-word]!" (*Id.*) Defendant Gregoire proceeded to call Johnson the n-word from 9:55 a.m. "to approximately 11:30 a.m." (*Id.*)

Later that day, Defendants Rynerson, Fernandez, Holloway, and Suwe came to Johnson's cell and "discussed having to move to [the new cell] with inmate Harrison." (*Id.*) Johnson told them he could neither access the top bunk nor share a cell with Harrison. (*Id.*) Johnson added that "he had been written up

8

for this issue weeks before," and the charges were "dismissed as baseless." (*Id.*) Johnson gave these Defendants the dismissed notice of charges, which they then took up to "administration" to inquire about why Defendants Gregoire, Meza, and Cornfield were trying to "write [Johnson] up for an issue that he was just written up on and dismissed." (*Id.*) Defendants Rynerson, Fernandez, Holloway, and Suwe returned, informing Johnson that Defendants Ashcraft, Meza, and Fond believed the new notice of charges would "not turn out the same way as the last one" because Johnson had "already filed a lawsuit on this issue." (*Id.* at 10–11.) Defendants Rynerson, Fernandez, Holloway, and Suwe then ordered Johnson to move into the new cell with Harrison or be "written up[,] sent to the hole[,] and kicked out of the Phoenix Program." (*Id.* at 11.) Johnson refused to move in with Harrison. (*Id.*) As a result, Defendant Gregoire wrote Johnson up, causing Johnson to be sent to the hole and kicked out of the program. (*Id.*) Defendant Fratis served the notice of charges on Johnson, saying that Defendant Ashcraft had told him "not to even consider dismissing [the charges] because we have to find you guilty." (*Id.*)

Defendant Barrius was Johnson's caseworker while Johnson was in the hole. (*Id.*) Johnson asked Defendant Barrius if Johnson could return to the Phoenix Program or, alternatively, join the Trust Program, a drug treatment program at Southern Desert Correctional Center. (*Id.*) Defendant Barrius told Johnson that (i) he could not return to the Phoenix Program because "Harrison threatened to sexually assault [him]," and (ii) he could not participate in the Trust Program because Defendants Ambaker and Fiess had said his inability to "climb [to] the top bunk" disqualified him. (*Id.* at 11–12.) Johnson responded, "This is retaliation! I need a grievance[.]" (*Id.* at 12.) Defendant Barrius said the issue was not "grievable." (*Id.*)

On December 2, 2021, Johnson was transferred from WSCC to Northern Nevada Correctional Center. (*Id.*) Two months later, on February 3, 2022, the

9

latest notice of charges against Johnson was "dismissed" as "baseless." (*Id.*)

Based on these allegations, Johnson brought a First Amendment retaliation claim, an Eighth Amendment claim for deliberate indifference, and a Fourteenth Amendment equal protection claim. (*Id.* at 13, 17, 19.) The Court liberally construed Johnson's second claim as an Eighth Amendment claim based on unsafe prison conditions. (3:22-cv-00108-MMD-CSD, ECF No. 4 at 7–8.)

### C. Comparison of the causes of action in *Johnson I* and *Johnson II*

#### 1. First Amendment retaliation claims

In *Johnson I*, Johnson alleged that (1) in response to Johnson threatening to sue Defendant Cornfield, Defendant Cornfield threatened to have the Aryan Warriors assault Johnson, to file a false NOC against Johnson, to get Johnson removed from the Phoenix Program, and to get Johnson booked on new charges by sending synthetic marijuana in his name; (2) in response to Johnson threatening to sue Defendant Cornfield, Defendant Cornfield tried to get inmates to assault and kill Johnson; (3) in response to Johnson threatening to sue Defendants Cornfield, Defendants Cornfield, Gregoire, Meza, and Feiss forced Johnson to move to a top bunk; and (4) in response to Johnson threatening to sue Defendants Cornfield and Johnson filing an emergency grievance, Defendants Gregoire, Meza, and Fiess wrote a false NOC against Johnson and removed him from the Phoenix Program. (ECF No. 6 at 8–9.)

In *Johnson II*, Johnson alleged that (1) in response to Johnson threatening to sue Defendant Cornfield, Defendant Cornfield tried to have Johnson assaulted; (2) in response to Johnson filing a grievance complaining about his top bunk assignment, Defendants Rynerson, Gregoire, and Cornfield threatened to write Johnson up and cause his parole application to be denied; (3) in response to Johnson filing lawsuits and grievances about the top-bunk issue and Harrison's threats, Defendant Meza threatened to write Johnson up and send him to the hole; (4) in response to Johnson filing an emergency grievance about his

1 encounter with Defendants Meza and Ashcraft, Defendant Gregoire wrote
2 Johnson up. (3:22-cv-00108-MMD-CSD, ECF No. 8 at 5–11.)

3 In both *Johnson I* and *Johnson II*, Johnson alleges the following First
4 Amendment retaliation claim: in response to Johnson threatening to sue
5 Defendant Cornfield, Defendant Cornfield tried to have Johnson assaulted. In his
6 response to the motion to dismiss, Johnson admits that this claim is duplicative
7 and should be dismissed. (ECF No. 37 at 5.) As such, the portion of claim 1(a)
8 alleging that Defendant Cornfield threatened to have the Aryan Warriors assault
9 Johnson and claim 1(b) are dismissed with prejudice. The remainder of the claims
10 in *Johnson I* and *Johnson II* do not share the same facts.

## 2. Eighth Amendment claims

12 In *Johnson I*, Johnson alleged that Defendants Gregoire, Cornfield, Meza,
13 Nerson, and Mahram assigned Johnson to a top bunk on October 5, 2021, and
14 October 6, 2021.[5] (ECF No. 6 at 10–11.) In *Johnson II*, Johnson alleged that (1)
15 Defendant Cornfield recruited other inmates to attack Johnson, (2) Defendants
16 Gregoire, Cornfield, and Meza assigned Johnson to a top bunk on November 10,
17 2021, and (3) several Defendants ordered Johnson to move into a new cell with
18 Harrison.[6] (3:22-cv-00108-MMD-CSD, ECF No. 8 at 5–7, 17–18.)

19 Although the single Eighth Amendment claim based on unsafe prison
20 conditions in *Johnson I* is similar to the second Eighth Amendment claim based
21 on unsafe prison conditions in *Johnson II*, the claims arise out of instances
22 occurring on different dates: October 5, 2021, in *Johnson I* and November 10,
23 2021, in *Johnson II*. Indeed, in *Johnson II*, Johnson references the prior incident
24 from *Johnson I*, further supporting the conclusion that these claims are not the
25 same: "this same order caused Plaintiff to violently fall to the concrete floor

---

[5] The Court dismissed Defendants Fiess and Daniels from this claim. (ECF No. 5 at 9–10.)
[6] The Court found the third allegation to be insufficient to support a colorable claim. (3:22-cv-00108-MMD-CSD, ECF No. 4 at 13.)

11

repeatedly injuring himself. He was still injured on 11/10/21 due to these defendant's cause [sic] him injuries on 10/5/21." (*Id.* at 17.) Moreover, the claim in *Johnson I* is brought against two additional defendants than the similar claim in *Johnson II*. Consequently, this Court finds that the claims in *Johnson I* and *Johnson II* do not share the same facts.

### 3. Fourteenth Amendment equal protection claims

In *Johnson I*, Johnson alleged that on October 6, 2021, Defendants Meza, Gregoire, and Cornfield wrote an NOC against him and removed him from the Phoenix Program because he is Muslim and black. (ECF No. 6 at 13.) In *Johnson II*, Johnson alleged that on November 10, 2021, Defendant Cornfield tried to have Johnson assaulted and assigned to a top bunk because he is black, Defendant Gregoire sent Johnson to the hole for being black, Johnson was targeted for an attempted assault because he is a Muslim, and Defendant Cornfield told another inmate that he could not wear a kufi because he was "not Black or Muslim." (3:22-cv-00108-MMD-CSD, ECF No. 8 at 5–11, 19–20.)[7] The specific Fourteenth Amendment equal protection claim in *Johnson I* was not raised in Johnson's Fourteenth Amendment equal protection in *Johnson II*.

### 4. RLUIPA

In *Johnson I*, Johnson alleged that Defendant Cornfield told him that he "could not exercise his spiritual duty by instructing [a fellow inmate] that [that fellow inmate] could wear his Kuffi." (ECF No. 6 at 12.) Although Johnson included these same factual allegations in *Johnson II* (*see* 3:22-cv-00108-MMD-CSD, ECF No. 8 at 5), he did not bring a RLUIPA claim in *Johnson II*. Indeed, rather than including these factual allegations to support a RLUIPA claim, these factual allegations were included in *Johnson II* to show the catalyst for one of Johnson's retaliation claims.

---

[7]This Court dismissed Johnson's last two theories without prejudice. (ECF No. 4 at 15.)

12

#### D. Comparison of the parties/privies in *Johnson I* and *Johnson II*

Excluding the defendants that were dismissed, Johnson sued Gregoire, Cornfield, and Meza in both *Johnson I* and *Johnson II*. However, importantly, Defendants Nerson[8] and Mahram are included in *Johnson I* but not *Johnson II*.

#### E. Conclusion

It is certainly true, as Defendants argue, that the gravamen of *Johnson I* and *Johnson II* concern Johnson's participation in the Phoenix Program, his bunk assignment, assaults by other inmates, getting retaliatory charges filed against him, and issues surrounding his religion. However, a careful review of the Complaint in *Johnson I* and the complaint in *Johnson II* demonstrates that—with the exception of the retaliation claim against Defendant Cornfield—the facts of Johnson's claims do not truly overlap, making the underlying fundamental identity of the cases different. *Cf. Mendoza v. Amalgamated Transit Union International*, 30 F.4th 879, 887 (9th Cir. 2022) ("The fact that *Mendoza II* involves somewhat different legal theories and a somewhat broader range of related conduct and damages [than *Mendoza I*] does not alter the underlying fundamental identity of the suits."). Thus, even though the defendants in *Johnson I* and *Johnson II* were nearly identical, the Court finds that *Johnson I* is not entirely duplicative of *Johnson II*, so a dismissal of the entirety of the Complaint in *Johnson I* and the giving of a strike are not warranted.

Further, although the Complaint in *Johnson I* was filed after the complaint in *Johnson II*—July 26, 2022, versus June 10, 2022—*Johnson II* was commenced after *Johnson I*—February 28, 2022, versus February 16, 2022. Accordingly, the Court notes, without deciding, that the Defendants should have filed their motion to dismiss in *Johnson II*, the "later-filed action." *Adams*, 487 F.3d at 688.

Finally, Johnson has filed a motion requesting oral argument on the motion

---

[8]The Court suspects, however, that Defendant Nerson in *Johnson I* and Defendant Rynerson in *Johnson II* may be the same person.

13

to dismiss. (ECF No. 40.) The Court declines to hold an oral argument, determining that the briefs are sufficient to rule on the motion to dismiss.

## IV. Conclusion

It is therefore ordered that Defendants' motion to dismiss [ECF No. 35] is granted, in part, and denied, in part, as follows: the portion of claim 1(a) alleging that Defendant Cornfield threatened to have the Aryan Warriors assault Johnson and claim 1(b) are dismissed with prejudice.

It is further ordered that Plaintiff's motion for hearing [ECF No. 40] is denied.

DATED THIS 16th day of November 2022.

ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE